Opinion
BRUINIERS, J.
Kevin Joseph Smith was one of three people extracted from a vehicle involved in a single-car rollover accident. Smith’s blood-alcohol content (BAC) was determined to be 0.24 percent, and he was charged with driving under the influence (DUI) causing injury (Veh. Code, § 23153, subd. (a)) and driving with a BAC in excess of 0.08 percent causing injury {id., § 23153, subd. (b)). As to both counts, it was alleged that Smith’s BAC was in excess of 0.20 percent {id., § 23538, subd. (b)(2)), he proximately caused bodily injury to two victims (id.. § 23558), he personally inflicted great bodily injury upon one of those victims (Pen. Code, § 12022.7, subd. (a)), and he had suffered a prior DUI conviction (Veh. Code, §§ 23560, 23566). Smith sought to introduce evidence at trial that another vehicle occupant made an extrajudicial statement against penal interest indicating she, and not Smith, was driving at the time of the accident. After an Evidence Code section 402 hearing, the trial court found the statement unreliable and *300 declined to permit evidence of the statement to be presented to the jury. Smith was convicted on both counts and all allegations found true. He argues the court abused its discretion in excluding the third party admission. We affirm.
I. Background and Procedural History
Shortly after midnight on March 23, 2014, Vallejo Police Officer Jason Thompson responded to a residence in Vallejo. He observed a gray Dodge vehicle, later determined to belong to Smith, flipped on its side with its roof resting against the front of the house. The roof of the car was partially caved in and the front bumper was stuck to the side of the house. Thompson observed Smith, Smith’s girlfriend (Norsheequa Deocampo), and Deocampo’s cousin (Charlonda Anderson) inside the vehicle laying on the door panels and in between the seats. Smith was unconscious, pinned between the passenger seats and passenger side doors with his head toward the front of the car and his feet toward the rear. No one was in the driver’s seat. A crowd of spectators ignored Thompson’s command to move back from the vehicle, and one individual extricated Deocampo from the vehicle after smashing a window with a hammer. Smith and Anderson were removed by fire department personnel, after cutting away the roof.
In Thompson’s presence, Smith told Robert Aikman, the treating paramedic at the scene, that he had been driving the car.[1] Smith’s cousins, Michael and Marico Garman, also spoke to Thompson at the scene. The Garman brothers told Thompson they were following Smith’s car and witnessed the collision. Thompson testified that the brothers said the car was traveling at 35 to 40 miles per hour and suddenly veered left and flipped onto the yard of the house. Both said Smith was driving the car.
When examined at the hospital, Smith, Deocampo, and Anderson each smelled of alcohol, had bloodshot and watery eyes, and appeared intoxicated. After first saying she did not know what happened or who was driving, Anderson told Thompson that Smith drove the car and she was in the front passenger seat. Tests of blood drawn from Smith a little over two hours after the accident measured his BAC at 0.24 percent.
Deocampo and Anderson both suffered cuts and abrasions from the collision. Anderson’s left femur was fractured, requiring placement of a permanent rod in her leg. She was hospitalized for three to four weeks and could *301 not walk without a walker or crutch for some time afterward. She required medications one to two months following her release from the hospital, and she continued to experience pain at the time of trial. Deocampo’s medical records reflected “soft tissue type injuries.”
Smith was charged by information with DUI causing injury (Veh. Code, § 23153, subd. (a)) and driving with a BAC in excess of 0.08 percent causing injury {id., § 23153, subd. (b)). As to both counts, it was alleged that Smith’s BAC was in excess of 0.20 percent {id., § 23538, subd. (b)(2)), he proximately caused bodily injury to two victims {id., § 23558), he personally inflicted great bodily injury upon one of those victims (Pen. Code, § 12022.7, subd. (a)), and he had suffered a prior DUI conviction (Veh. Code, §§ 23560, 23566).
At trial, Anderson testified that Deocampo, and not Smith, was driving at the time of the accident. Anderson said she was feeling the effects of morphine when she spoke to Thompson on the night of the collision and could not recall what she said. The Garman brothers denied telling Thompson that Smith was the driver and denied they witnessed the collision.
The defense called Smith’s aunt, Angela Chambers, who testified she was at a party at Smith’s grandmother’s house the evening of the accident. Smith and Deocampo also attended the party. Chambers said she gave Smith’s car keys to Deocampo and told her to drive him home because Smith was “far too intoxicated to be driving.” Chambers said she received a telephone call about the accident and went to the scene. She saw paramedics remove Smith from the backseat of the car where she had placed him. In rebuttal, Thompson testified that Chambers would not have been able to see where Smith was extracted from within the vehicle because crime scene tape prevented spectators from entering the scene, and numerous emergency personnel were inside the perimeter blocking the spectators’ view. The only available view of the car was of its undercarriage, and Smith and Anderson were extracted through the car’s roof.

Excluded Evidence

Deocampo was included on both prosecution and defense pretrial witness lists. When advised that the defense expected Deocampo to testify she was the driver, the court appointed counsel to represent her.[2] Deocampo’s appointed counsel advised the court that Deocampo would invoke her Fifth Amendment privilege if called to testify. The prosecution said it would not call Deocampo as a witness, but Smith’s counsel stated his intention to call *302 her and require her to assert the privilege before the jury. The court conducted a hearing outside the jury’s presence, at which Deocampo refused to answer any questions. The court found “there would be no purpose in putting [Deocampo] in front of the jury and having her invoke” and stated it was exercising its discretion to not permit her to be called as a witness simply for the purpose of invoking her privilege against self-incrimination. Deocampo was excused as a witness with the agreement of both parties.
Smith’s counsel then indicated his intention to call an investigator, Angela Santos, to testify regarding Deocampo’s claim to have been the driver, arguing that the statement was admissible as a declaration against penal interest. The prosecution objected to the statement as unreliable and argued it should not be admitted. At an Evidence Code section 402 hearing outside of the jury’s presence, the court took testimony from Santos and Justin Legasa, a firefighter/paramedic who was at the scene of the accident.
Santos testified to a December 2014 telephone conversation with Deocampo. Deocampo told Santos she had been drinking the night of the collision. After an altercation between Smith and another person at a party, Angela Chambers and Marico Garman put Smith in the backseat of his car. Deocampo got into the driver’s seat, and Anderson was in the front passenger seat. Deocampo was driving the car when the collision occurred. Deocampo told Santos she “needed to do the right thing and admit what she did.” Santos opined that Deocampo was forthright and seemed “contrite.” Deocampo claimed she told an emergency room physician she was the driver and said she would provide her medical records to confirm this. She never did so.
Legasa testified he was dispatched to the collision scene and was assigned to treat Deocampo, who was out of the car when he arrived. Deocampo told him she was in the backseat of the car at the time of the collision and was wearing her seatbelt. Thompson was present at the outset of the hearing and confirmed that Deocampo (and Anderson) told him Smith was the driver.
The court declined to admit the extrajudicial statement, finding it was “not trustworthy or reliable” under the totality of the circumstances: “I’m not going to let in a prior inconsistent statement by a girlfriend of [Smith] who appears to be taking the blame for him without subjecting herself to cross-examination. I think that’s unfair to the Prosecution.”

Verdict and Sentence

Smith was found guilty on both counts, and all enhancement allegations were found true. He was placed on probation for a term of five years, with a *303 condition of 365 days in county jail, and ordered to pay $22,862.54 in restitution. Smith filed a timely notice of appeal.
II. Discussion
A trial court’s decision to admit or exclude evidence is a matter committed to its discretion “ ‘and will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.’ ” (People v. Brown (2003) 31 Cal.4th 518, 534 [3 Cal.Rptr.3d 145, 73 P.3d 1137]; see People v. Cortez (2016) 63 Cal.4th 101, 125, fn. 5 [201 Cal.Rptr.3d 846, 369 P.3d 521] [trial court’s determination of admissibility under Evid. Code, § 1230 is reviewed for abuse of discretion].)
Smith sought to admit Deocampo’s hearsay statement to Santos as a declaration against interest under Evidence Code section 1230. An extrajudicial declaration against the declarant’s penal interest is admissible as an exception to the hearsay rule. As relevant here, Evidence Code section 1230 provides that: “Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made ... so far subjected him to the risk of civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true.” “ ‘The proponent of such evidence must show “that the declarant is unavailable,[3] that the declaration was against the declarant’s penal interest, and that the declaration was sufficiently reliable to warrant admission despite its hearsay character.” ’ [Citation.] ‘The focus of the declaration against interest exception to the hearsay rule is the basic trustworthiness of the declaration.’ ” (People v. Geier (2007) 41 Cal.4th 555, 584 [61 Cal.Rptr.3d 580, 161 P.3d 104], overruled on other grounds in Melendez-Diaz v. Massachusetts (2009) 557 U.S. 305 [174 L.Ed.2d 314, 129 S.Ct. 2527]; see People v. Gonzales (2011) 51 Cal.4th 894, 933 [126 Cal.Rptr.3d 1, 253 P.3d 185] [“basic trustworthiness and factual truthfulness are required” for statements admitted pursuant to Evid. Code, § 1230].)
“ ‘There is no litmus test for the determination of whether a statement is trustworthy and falls within the declaration against interest exception. The trial court must look to the totality of the circumstances in which the statement was made, whether the declarant spoke from personal knowledge, the possible motivation of the declarant, what was actually said by the declarant and anything else relevant to the inquiry.’ ” (People v. Tran (2013) *304 215 Cal.App.4th 1207, 1217 [155 Cal.Rptr.3d 803].) “ ‘In determining whether a statement ... is sufficiently trustworthy to be admissible, the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the de-clarant’s relationship to the defendant.’ [Citation.] ‘[E]ven when a hearsay statement runs generally against the declarant’s penal interest . . . , the statement may, in fight of circumstances, lack sufficient indicia of trustworthiness to qualify for admission. . . . [¶] . . . We have recognized that, in this context, assessing trustworthiness “ ‘requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception.’ ” ’ ” (People v. Geier, supra, 41 Cal.4th at p. 584.)
As the trial court noted here, Deocampo is Smith’s girlfriend. The statement made to the defense investigator appears more focused on exculpating Smith than implicating herself. Santos admittedly did not advise Deocampo that her statement could subject her to criminal prosecution. Once Deocampo had legal representation, she declined to make any statement. Given Deocampo’s ongoing dating relationship with Smith from the time of the accident to the time of trial, she almost certainly would have been aware Smith was criminally charged as a result of the accident, yet she never came forward to police and only made the statement at issue here almost five months after the initial felony complaint was filed and nearly nine months after the accident. (4) “The significant passage of time is a relevant circumstance to be considered when determining a statement’s reliability.” (People v. Masters (2016) 62 Cal.4th 1019, 1057 [199 Cal.Rptr.3d 85, 365 P.3d 861].) Moreover, Deocampo’s later statement was inconsistent with her prior contemporaneous statements to emergency responders that she was in the backseat of the car at the time of the collision and Smith was driving. Her claim to have made a consistent statement to hospital medical personnel remained unverified. Inconsistent statements by a declarant raise obvious questions about the credibility of a subsequent contrary assertion, and inconsistent statements are “obvious indicators” of unreliability. (People v. McCurdy (2014) 59 Cal.4th 1063, 1109 [176 Cal.Rptr.3d 103, 331 P.3d 265]; see People v. Geier, supra, 41 Cal.4th at p. 585.)
Smith cites People v. Cudjo (1993) 6 Cal.4th 585 [25 Cal.Rptr.2d 390, 863 P.2d 635] for the proposition that the trial court improperly relied on “discrepancies between Deocampo’s statement to police and her statement to Santos to find the statement unreliable.” In Cudjo, the Supreme Court found the trial court erroneously excluded a hearsay statement by the defendant’s brother confessing to a murder during the course of a burglary and robbery. (Id. at pp. 599, 604, 607.) The trial court’s error, however, was its focus on the credibility of the in-court witness who proposed to testify as to the brother’s statement. (Id. at p. 610.) The trial court found the testimony of the *305 live witness to be “ ‘unreliable and untrustworthy.’ ” (Id. at p. 606.) “Because the rule excluding hearsay is based on these particular difficulties in assessing the credibility of statements made outside the jury’s presence, the focus of the rule’s several exceptions is also on the reliability of the out-of-court declaration. Thus, the various hearsay exceptions generally reflect situations in which circumstances affording some assurance of trustworthiness compensate for the absence of the oath, cross-exantination, and jury observation. [Citation.] Neither the hearsay rule nor its exceptions are concerned with the credibility of witnesses who testify directly to the jury.” {Id. at p. 608.) Although the error was ultimately found harmless, the high court concluded that “doubts about the [in-court witness’s] credibility, though reasonable and legitimate, did not provide a sufficient basis to exclude his testimony.” {Id. at p. 610.) Here, the trial court’s focus was properly on the reliability of Deocampo’s statement. Smith fails to demonstrate the trial court abused its discretion in finding a lack of reliability, and therefore a lack of admissibility, under the totality of circumstances.[4]
We would, in any event, find any error in excluding the Evidence Code section 1230 evidence harmless. Smith was able to present his defense through the direct testimony of Anderson and Chambers. To arrive at a guilty verdict, the jury necessarily rejected the sworn testimony of both witnesses. It is not reasonably probable that Smith would have obtained a different result from introduction of an unsworn statement, particularly one that would have been impeached with Deocampo’s contemporaneous utterances. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)
III. Disposition
The judgment is affirmed.
Jones, P. J., concurred.

 Aikman had no independent recollection of Smith’s statement at the time of trial, but confirmed that his incident report narrative identified Smith as the driver. Aikman said he would have identified Smith as the driver in one of two ways—either from extrication from the driver’s seat of the vehicle, or based on a statement by Smith. Aikman did not recall which was the basis for the statement in his report.

 Counsel was also appointed for Anderson.

 Both sides agree Deocampo’s invocation of her privilege against self-incrimination rendered her unavailable as a witness. (See Evid. Code, § 240, subd. (a)(1).)

 Smith does not acknowledge, or even address, our standard of review in his opening or reply briefs. He suggests in his opening brief, without any further discussion or development, that “[t]he erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair' trial and the Sixth Amendment right to present a defense.” A similar argument was rejected in People v. Cudjo: “ ‘As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused’s [constitutional] right to present a defense. Courts retain ... a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice. [Citations.] . . . [T]his principle applies perforce to evidence of third-party culpability . . . .’ [Citation.] [¶] It follows, for the most part, that the mere erroneous exercise of discretion under such ‘normal’ rules does not implicate the federal Constitution.” (People v. Cudjo. supra. 6 Cal.4th at p. 611; see People v. McCurdy, supra. 59 Cal.4th at p. 1110 [“[t]he federal Constitution . . . does not generally create a code of evidence that supersedes a state’s evidentiary rules”].)