Filed 9/16/21 In re Terry S. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re TERRY S. III, a Person Coming Under the Juvenile Court Law. | B309871 (Los Angeles County Super. Ct. No. 19CCJP05137) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ALISHA W. et al., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Brett Bianco, Judge. Conditionally reversed and remanded.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant Alisha W.

Patricia K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant Terry S., Jr.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellants Alisha W. (mother) and Terry S., Jr. (father) appeal from an order of the juvenile court terminating their parental rights over their child, Terry S. III.  The sole issue in this appeal is whether the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) complied with the duties of inquiry and notice under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.  Though we disagree with parents' first contention that the juvenile court failed to make a finding whether the ICWA applied in this case, we agree with their second contention that DCFS failed to further inquire into the child's status as an Indian child.  We conditionally reverse the order terminating parental rights and remand the matter for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Mother and father are the parents of Terry S. III (born Feb. 2019). From the time this case was initiated to the termination of parental rights, the child was detained in the home of maternal aunt and uncle.

_____

[1] Because this appeal raises only the issue of compliance with the ICWA, we provide a brief synopsis of the factual and procedural history in this case.

In August 2019, DCFS filed a petition under Welfare and Institutions Code section 300,[2] and alleged the child was at substantial risk of harm due to parents' history of engaging in violent altercations in the presence of the child, their history of substance abuse, and mother's mental and emotional problems. In an Indian Child Inquiry Attachment to the petition (ICWA-010), DCFS reported that father had denied any knowledge of Indian ancestry, while mother "believes there is Indian ancestry on her father's side of the family." In a detention report, DCFS alleged that the ICWA "does or may apply."

At the August 2019 detention hearing, mother and father submitted Parental Notification of Indian Status (ICWA-020) forms. Father stated he had no Indian ancestry. In her form, mother stated she may have Indian ancestry through "Tribes unknown." Mother also informed the court that her paternal grandmother (then deceased) had told her that she had Indian heritage through an unknown tribe. Based on mother's statements, the court ordered the "the Department [to] look into that and do the necessary notices. Department to interview mother and any other persons that she identifies that might have information." The court then detained the child and ordered monitored visitation for both parents.

In a jurisdiction/disposition report filed with the court on September 12, 2019, DCFS reported that it had interviewed maternal aunt, mother, and maternal grandfather regarding the child's Indian

---

[2] Undesignated statutory references are to the Welfare and Institutions Code.

heritage. Maternal aunt reported having no knowledge of or affiliation with any Indian tribe. Mother reported that while she was not personally a member of an Indian tribe, her great-grandmother had claimed membership or affiliation with an unknown tribe. Maternal grandfather confirmed in his own interview that his maternal grandmother "was Cherokee Indian." Maternal grandfather provided the name and state of birth for his maternal grandmother, as well as the name of his mother, her date of birth and death, and the city and state in which she was born and passed away. He also provided the name of his father, his date of birth, and current location even though maternal grandfather had no Indian ancestry through his paternal side. Maternal grandfather could not provide additional family members who might possess information concerning the family's Indian heritage. DCFS reported that it "will continue to investigate the said claim about American Indian Ancestry. The information will be forwarded to [the] Court separately once it is available."

At the jurisdiction and disposition hearing on September 25, 2019, the court admitted into evidence all reports submitted by DCFS, took judicial notice of the dependency case file, and considered all of the evidence in making its findings and orders. The court sustained the petition as alleged, declared the child a dependent of the court, removed him from parents, and granted both parents reunification services.

When discussing parents' reunification services, counsel for DCFS stated that she had "provided case plans to the court." The court signed and dated both case plans. In each case plan, the box "No" was checked under the section whether the "I.C.W.A. Applies." A minute order from

the jurisdiction and disposition hearing states in part: "Family reunification, maintenance, or enhancement, or reunification services and visitation rights are granted or denied as set forth in the court ordered case plan(s) which are incorporated herein by this reference."

All subsequent reports submitted by DCFS reference the court's September 25, 2019 finding that the ICWA did not apply. The reports do not furnish additional information on DCFS's additional efforts at investigating the child's Indian heritage or determining whether the ICWA applied in this case. There is no dispute that no ICWA notice of any sort was ever sent.

At a continued review hearing on September 1, 2020, the court terminated reunification services after finding parents had failed to make substantial progress in their case plan. The court set a section 366.26 hearing for January 6, 2021.

At the section 366.26 hearing in January 2021, the court found that it would be detrimental to return the child to the parents' custody, and that the parents had not maintained regular visitation or established a parental bond with the child. After finding Terry S. III adoptable, the court terminated the parental rights of mother and father. Parents filed timely notices of appeal.

## DISCUSSION

I.    *Governing Law*

The "ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state

court must follow before removing an Indian child from his or her family. [Citations.]" (*In re T.G.* (2020) 58 Cal.App.5th 275, 287 (*T.G.*); see also *In re Abbigail A.* (2016) 1 Cal.5th 83, 91 [the state Legislature incorporated the ICWA's requirements into statutory law in 2006].) Both the ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); accord, § 224.1, subds. (a)-(b).)

The Welfare and Institutions Code imposes on "courts and county welfare departments '. . . an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child.'" (*T.G.*, *supra*, 58 Cal.App.5th at p. 290, quoting § 224.3, subd. (a).) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).)

The initial duty to inquire begins with the child's initial contact (i.e. when the referring party reports abuse or neglect necessitating an investigation), and extends to the child's placement into temporary custody and the first appearance in court of each party. (§ 224.2, subds. (a)-(c).) The initial duty to inquire includes asking the child, parents, legal guardian, extended family members, or others who have an interest in the child whether he or she is or may be an Indian child. (*Id.*, subds. (b)-(c).) The parties must complete a Parental Notification of Indian Status form (ICWA-020). (Cal. Rules of Court, rule 5.481(a)(2)(C).)

6

A duty of further inquiry arises when the court or county welfare department "has reason to believe that an Indian child is involved" in the proceedings. (§ 224.2, subd. (e); *D.F.*, *supra*, 55 Cal.App.5th at p. 566.) As of the time of the relevant proceedings in this case, the Legislature had recently amended subdivision (e) of section 224.2 to define what constitutes "reason to believe." (See Assem. Bill No. 2944 (2019-2020 Reg. Sess.) § 9.)[3] As amended and applicable here, subdivision (e)(1) provides: "There is reason to believe a child involved in a proceeding is an Indian child whenever" the court or social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."

Whenever there is reason to believe the child is an Indian child, the county welfare department must conduct "further inquiry," including but not limited to interviewing the parents and extended family members to gather relevant information (§ 224.2, subd. (e)(2)(A));[4] contacting the Bureau of Indian Affairs and the State

---

[3]    Former section 224.2 did not define what constitutes a "reason to believe." (See *D.F.*, *supra*, 55 Cal.App.5th at p. 566; former § 224.2, subd. (e).) The recent amendment to section 224.2, subdivision (e), became effective September 18, 2020, before the January 2021 order terminating parental rights in this case. (See Assem. Bill No. 2944 (2019-2020 Reg. Sess.); Stats. 2020, ch. 104, § 15; *T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.)

[4]    Relevant information to be obtained includes: all known names of the Indian child, biological parents, grandparents, and great-grandparents, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information. (§ 224.3, subd. (a)(5).)

Department of Social Services for assistance in identifying contact information of the tribes in which the child may be a member or eligible for membership (*id.*, subd. (e)(2)(B)); and contacting the tribes and any other person who reasonably may be expected to have relevant information on the child's membership or eligibility status (*id.*, subd. (e)(2)(C)). Contact with a tribe must include, at a minimum, "telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices" and include "information identified by the tribe as necessary for the tribe to make a membership or eligibility determination." (*Ibid.*)

Finally, whenever the court or county welfare department has reason to know an Indian child is involved (see § 224.2, subd. (d)), the tribes must be sent notice with sufficient information to enable the tribe to conduct a meaningful review to determine the child's eligibility for membership. (§ 224.3, subd. (a)(1); see § 224.2, subd. (d) [setting forth six circumstances mirroring 25 C.F.R. § 23.107(c) in which "reason to know" arises]; *In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.)

II. *Standard of Review*

The juvenile court must determine whether the ICWA applies to the proceedings. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403 (*E.W.*).) "[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.]" (*In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*); accord, *D.F., supra*, 55

8

Cal.App.5th at p. 565.) However, "where the facts are undisputed, we independently determine whether [the] ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

III.    *Analysis*

Mother and father contend that (1) the juvenile court failed to make a finding whether the ICWA applies in this case; and (2) DCFS failed to comply with its duty to make further inquiry into whether the child is an Indian child.

As to the parents' first contention, we disagree. "While the record must reflect that the court considered the issue and decided whether [the] ICWA applies, its finding may be either express or implied." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506; see *In re Michael V.* (2016) 3 Cal.App.5th 225, 233–234.) Here, the court ordered DCFS to investigate mother's claim of possible Indian heritage. The efforts DCFS took to initially investigate the claim appear in the jurisdiction and disposition report, which the court considered before it adjudicated the petition. The court signed and dated case plans for each parent in which it was specified that the ICWA does not apply. Those case plans were incorporated by reference into the court's order adjudicating the petition. Thus, the record demonstrates that the court considered the issue and at the very least made an implicit finding that the ICWA does not apply. (See *E.W., supra,* 170 Cal.App.4th at p. 405 ["an implicit ruling suffices, at least as long as the reviewing court can be confident that the juvenile court considered the issue and there is no question but that an explicit ruling would conform to the implicit one"].)

9

However, we agree with mother and father's second contention that DCFS was duty-bound to make a further inquiry into the child's Indian heritage, and failed to so inquire. Mother's belief she may have Indian heritage was confirmed by maternal grandfather, who stated that his maternal grandmother "was Cherokee Indian." The identification of an ancestor through which mother and the child could be eligible for tribal membership clearly "suggest[s that] either the parent of the child or the child is a member or may be eligible for membership." (§ 224.2, subd. (e)(1).) This information imposed on DCFS a duty to make further inquiry regarding the possible Indian status of the child. (See *ibid.*; accord, *T.G.*, *supra*, 58 Cal.App.5th at p. 292 [DCFS duty-bound to conduct further inquiry after mother stated she believed she had Indian heritage on both sides of her family through unknown ancestors]; *A.M.*, *supra*, 47 Cal.App.5th at p. 322 [possible Indian ancestry with tribes and identification of mother's grandfather as having possible Indian ancestry sufficient to require further inquiry].)

Relying on *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*), DCFS contends that the information it received from mother and maternal grandfather was insufficient to trigger the duty of further inquiry, as it only suggested a "mere possibility of Indian ancestry." But *Austin J.* is distinguishable in several respects.

Our colleagues in Division One decided *Austin J.* before section 224.2 was amended to include a definition of "'reason to believe.'" (*Austin J.*, *supra*, 47 Cal.App.5th at p. 883; see *In re S.R.* (2021) 64

10

Cal.App.5th 303, 317 (*S.R.*) [the new provision to section 224.2 "forecloses the narrow interpretation of what constitutes reason to believe advanced by the court in *Austin J.*"].) *Austin J.* is also factually distinguishable. In that case, the mother suggested she "'may have Indian ancestry' and had been 'told that [her] mother had Cherokee [ancestry],' and [had been told] that she 'may have had Cherokee heritage.'" (47 Cal.App.5th at p. 888.) The court found these statements "[a]t most . . . suggest a mere possibility of Indian ancestry," which the court reasoned was insufficient to establish a reason to believe a child is an Indian child. (*Id.* at p. 888.) In this case, the information DCFS received went beyond the *suggestion* of possible Indian ancestry—maternal grandfather *confirmed* that the child's ancestor "was Cherokee Indian." (Compare *Austin J.*, *supra*, 47 Cal.App.5th at p. 890 ["by contrast, there is no indication that Mother or any of her ancestors was a member of, or eligible for membership in, an Indian tribe"]; with *In re N.G.* (2018) 27 Cal.App.5th 474, 482 (*N.G.*) [information that relatives of child were members of tribe deemed sufficient to trigger duty of further inquiry].)

In light of the foregoing, it is clear that DCFS was duty-bound to make further inquiry into the child's Indian heritage. That duty included making contact with the Bureau of Indian Affairs, the State Department of Social Services, the relevant tribes, and any other person that may reasonably be expected to have information regarding the child's membership or eligibility status in a recognized tribe. (§ 224.2,

11

subds. (e)(2)(A)-(C).) DCFS has not identified, and we cannot locate, anything in the record demonstrating further efforts in this regard.

Anticipating our conclusion, DCFS contends that its failure to further inquire into the child's Indian heritage constitutes harmless error. While it is true that noncompliance with the ICWA may be found harmless in cases in which the efforts to comply with the duty of inquiry are borne out by the appellate record, the record here is silent as to DCFS's efforts. It thus presents no basis for a finding of harmless error. (See *N.G., supra,* 27 Cal.App.5th at p. 485 [court will find prejudicial error when the record is silent on efforts to comply with the ICWA, as the court "simply cannot know whether [the department] would have discovered information sufficient" to determine whether the child is an Indian child]; accord, *In re A.C.* (2021) 65 Cal.App.5th 1060, 1070 ["we cannot know for certain whether the error did or did not prevent it from discovering Indian ancestry"].)

IV.  *Remand*

"The bottom line in this case is that further inquiry is required." (*S.R., supra*, 64 Cal.App.5th at p. 317.) Thus, as mandated by subdivision (e) of section 224.2, on remand the juvenile court must direct DCFS to make a meaningful inquiry regarding the child's possible Indian ancestry, including interviews with any person who may reasonably be expected to have information regarding the child's tribal membership or eligibility for membership, and contact with relevant Cherokee tribes that may have such information. If that information establishes a reason to know an Indian child is involved, notice in

12

accordance with section 224.3 must be provided to any tribe that has been identified or, if the tribe could not be determined, to the Bureau of Indian Affairs.[5]  DCFS shall thereafter notify the court of its actions and file certified mail return receipts for any ICWA notices that were sent, together with any responses received.  The court must determine, on the record, whether the ICWA inquiry and notice requirements have been satisfied and whether Terry S. III is an Indian child.  If the court finds Terry S. III is Indian child, it is to conduct a new section 366.26 hearing, as well as any further proceeding in compliance with the ICWA and related California law.  If not, the court may reinstate its original section 366.26 order.

//

//

//

//

//

//

//

//

//

//

---

[5]    In light of this conclusion, we do not consider mother's alternative contention that DCFS failed to send notices to tribes under section 224.3, subdivision (a).

## DISPOSITION

The section 366.26 order is conditionally reversed.  The matter is remanded to the juvenile court for full compliance with the inquiry provisions of the ICWA and for further proceedings consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

14