Filed 12/2/22  P. v. Johnson CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079257 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE401368) |
| JAVAN JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General for Plaintiff and Respondent.

A jury convicted Javan Johnson of two counts of robbery (Pen. Code, § 211), and found true allegations Johnson, though not personally armed with a firearm, was vicariously liable as a principal during the commission of the

offenses (Pen. Code, § 12022, subd. (a)(1)).  Johnson admitted he suffered a 2017 robbery that constituted a serious felony prior conviction (Pen. Code, §§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and a strike prior conviction (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, 668).  The trial court sentenced him to a total term of 10 years in prison: on count 1 the court imposed a three-year midterm doubled for the strike plus one year for the Penal Code section 12022, subdivision (a)(1) enhancement; on count 2 it imposed one-third the midterm of six years for a term of two years; it then stayed the sentence on the Penal Code section 12022, subdivision (a)(1) enhancement, struck the five-year serious felony prior and imposed an additional one-year consecutive term for a probation violation.

Johnson contends with respect to count 2, the court prejudicially erred by admitting out-of-court statements from a person who accused him of committing the crime and others like it.  He maintains the statements are inadmissible hearsay not offered for a nonhearsay purpose, and presented to the jury without a limiting instruction.  Johnson contends the statements should have been excluded under Evidence Code section 352 as more prejudicial than probative, and the court's error in admitting them was not harmless since the victim's identification of him at trial was weak, as was the evidence of his guilt.  We reject the contentions and affirm the judgment.

*The Count 2 Robbery*

In December 2019, Johnson, whose nickname was Baker, made arrangements through a social media application with his friend J.K. to meet at a local park to smoke marijuana and buy some marijuana from J.K. J.K. and Johnson had played football together in high school. While J.K. was on the way to the park, Johnson told J.K. that Johnson's cousins would be meeting J.K. there. J.K. arrived at the park's lot and parked his car. He saw a person standing some distance away and had a strong feeling it was Johnson based on his build. When J.K. went to get the marijuana from his vehicle's trunk, two men who said they were Johnson's cousins or family approached and said they wanted to buy. J.K. came to the conclusion he was just going to make a quick sale. J.K. and the men entered J.K.'s car, but the men pulled out guns and told him to leave the parking lot. They hit J.K. on the head and arm with the guns, and eventually took the marijuana, $500 in cash, J.K.'s car keys and some paperwork. At some point, J.K. asked about Johnson, saying "Where's Baker?" and the men responded, "Fuck Baker. We not [*sic*] giving him shit." The men told J.K. not to try to chase them or exit his car. The men then left, heading back towards the park.

After waiting for the men to leave, J.K. went to a convenience store and called his mother, as he was selling marijuana and was not sure if police

---

[1]     The count 1 robbery was based on evidence that Johnson, in June 2020, made arrangements with A.F. to purchase marijuana from A.F. When A.F. arrived at the designated location, he was met by Johnson and two other men. After a fourth man approached with a gun, Johnson and the other men proceeded to take A.F.'s chain necklaces, his legally-registered gun, a pair of shoes and an ounce of marijuana. A.F. later identified Johnson and one of the other men in a photographic lineup. We need not rely on the facts of the count 1 robbery to reach our conclusions in this appeal.

would consider him a suspect or victim. J.K.'s mother came to get J.K., who told her he was selling marijuana to Johnson at a park but ended up getting pistol-whipped and robbed. She immediately remembered Johnson from her son's high school football days as having a distinguishing face.

Once he was home, J.K. called the police and reported the robbery, telling police he thought he had been "set up" by Johnson. Later that night, J.K. checked the social media application he used to initially talk with Johnson, and found that Johnson—who went by the names "Baker Cutz" and "Polo Baker"—had blocked him. J.K. then sent a "direct message" on a different social media application to Johnson accusing him of setting him up and asking him who his cousins were. Johnson responded, "Mike." When J.K. asked who the other person was, Johnson wrote that he did not know ("idk").[2]

Police found J.K.'s vehicle abandoned on a roadway. Detectives were unable to collect latent fingerprints from it. DNA analysis from samples of the rear driver side and front passenger interior door handles was inconclusive.

*Pretrial Evidentiary Arguments*

Before trial, counsel discussed evidence of social media direct messages exchanged between Johnson and an unknown female who was not on the witness list, in which the female accused Johnson of robbing J.K., which Johnson then denied. Defense counsel considered it hearsay, and the court

---

[2] Johnson points out that J.K. initially denied sending a message to Johnson that evening, but when recalled to the stand admitted he did so. The point merely raises an issue of J.K.'s credibility, which we do not assess on appeal. (Accord, *People v. Barton* (2020) 56 Cal.App.5th 496, 514, citing *People v. Jones* (1990) 51 Cal.3d 294, 314 [determining credibility of witnesses is the "exclusive province" of the trial judge or jury].)

initially agreed. The prosecutor argued the messages of the unknown female and Johnson were offered "for the context it gives . . . . [I]t is the answer from the defendant and the defendant's statement and the context of that that is relevant. [¶] So the questions from the person or the accusations aren't being offered for hearsay purpose, they're being offered to explain the context of the defendant's response that, no, [']I didn't rob [J.K.], my cousins did.['] "

The next day, the court ruled the evidence was admissible: ". . . I am persuaded that there is no proffered issue. I'm also persuaded that the evidence is relevant under [Evidence Code section] 352 analysis. It is not unduly prejudicial. . . . . [¶] . . . [¶] I am persuaded that it does assist the fact finder in understanding Mr. Johnson's statement on the direct messages . . . . And I will so indicate to the jurors that it is not the truth of the matter asserted with what the individuals have said, but it just assists them in making sense of what Mr. Johnson said in these messages."

*Trial*

At trial, J.K. testified that when police presented him a photograph of Johnson (trial exhibit 45), he identified him as his high school friend. He was asked whether he saw Johnson in the courtroom. J.K. identified Johnson, explaining that while he initially did not recognize him, he could now see Johnson's face and it was hard to see him with the mask on. The trial court remarked: "Well, I'll give him that, because I have heard other witnesses

5

who can't see through the shield." J.K. testified he had "[n]o question at all" that the defendant was his friend from high school.[3]

An El Cajon Police Department senior detective testified that she interviewed J.K. after the incident and J.K. identified Johnson from a photograph as the person who had set him up. J.K. gave the detective Johnson's social media handles, which were Polo Baker, Baker Cutz, Javan Baker and Javan Johnson. The detective located and reviewed a social media account for Polo Baker identifying the same birthdate as Johnson. The detective reviewed the "return" for the account and located a conversation between Polo Baker and a person named Ladonna. The detective recounted the conversation and explained why it had significance to her in her investigation:

"[Detective]: Basically Ladonna talked to Mr. Baker [Johnson] and stated that he likes to rob people. Mr. Baker stated, you know, who— 'who do I like to rob?' And Ladonna responded that 'you robbed [J.K.].'

"[Prosecutor:] And what was his response?

"[Detective:] He denied it. And then he replied, 'my cousin did and I got'—. . . [¶] . . . [¶] 'My cousin did and I got at I'm [*sic*] about that.'

"[Prosecutor:] And that was on January 8, 2020?

"[Detective:] Yes.

"[Prosecutor:] Four weeks or so after the December 9 incident?

---

3     Johnson points out that J.K.'s in-court identification occurred after J.K. was recalled as a witness. Initially, when asked if he saw Johnson in court J.K. responded that he did not; J.K. could not recognize Johnson even when Johnson removed his face mask. J.K. identified Johnson from a photograph, but still could not say he was the masked person sitting in the defendant's chair. J.K.'s mother, however, identified Johnson in court. This again raises a matter of J.K.'s credibility outside our purview.

"[Detective:]  That's correct."[4]

On cross-examination, the detective acknowledged that Ladonna wrote that she had "heard" Johnson robbed people, and Johnson's response: " '[T]hat's hella funny, damn people speak on my name, I didn't do nothing [*sic*] like that.' "  The detective did not follow up as to who Ladonna was or where she may have obtained the information.  She explained:  "Her account name does not provide a contact number or even a date of birth and an account name can be any name you list on social media.  So it can be a nickname, it can be your actual name or it can be a completely made up name.  So I did not know who in fact Ladonna was, without getting a separate search warrant for her account information to obtain her identifying information."

*Jury Instructions*

The court instructed the jury:  "During the trial, certain evidence was admitted for a limited purpose.  And you may consider that evidence only for that purpose and for no other.  So some evidence was admitted to explain the context of certain direct, direct messages.  And then certain evidence was limited to explain what the witness did or did not do as a result of that, receiving that information."

---

4    Page 38 of People's exhibit 1 shows the short conversation.  In it, Johnson asked when he and Ladonna were going to hang out, and Ladonna responded that Johnson "like[d] to rob people" and she was "not with that."  Johnson replied by asking who he robbed ("who I robe [*sic*]"), to which Ladonna responded, "IDK I just heard."  Johnson wrote:  "That hella funny damn people speak on my name I didn't do nothing [*sic*] like that."  Ladonna then wrote:  "U robbed [J.K.]" and Johnson responded, "Na  . . .  My cussin [*sic*] did and I got at I'm [*sic*] about that."

7

## DISCUSSION

### I. *Legal Principles and Standard of Review*

"The principles governing the admission of evidence are well settled. Only relevant evidence is admissible (Evid. Code, §§ 210, 350), 'and all relevant evidence is admissible unless excluded under the federal or state Constitutions or by statute. (Evid. Code, § 351; see also Cal. Const., art. I, § 28, subd. (d).)' [Citation.] 'The test of relevance is whether the evidence tends "logically, naturally, and by reasonable inference" to establish material facts such as identity, intent, or motive.' " (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

"Hearsay evidence is 'evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated.' (Evid. Code, § 1200, subd. (a).) Unless an exception applies, hearsay evidence is inadmissible. (*Id.,* subd. (b).)" (*People v. Harris*, *supra*, 37 Cal.4th at p. 336; see also *People v. Grimes* (2016) 1 Cal.5th 698, 710; *People v. Vasquez* (2017) 14 Cal.App.5th 1019, 1037.) "Thus, a hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true." (*People v. Sanchez* (2016) 63 Cal.4th 665, 674.)

One exception to the hearsay rule is for a defendant's own statements. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . ."]; see *People v. Charles* (2015) 61 Cal.4th 308, 323 ["Thus authenticated as having been written by defendant, any inculpatory statements in the letter were admissible as party admissions"].) Accordingly, statements admitted under this exception may be used to prove the truth of the matter stated.

8

But "[e]vidence of an out-of-court statement is also admissible if offered for a nonhearsay purpose—that is, for something other than the truth of the matter asserted—and the nonhearsay purpose is relevant to an issue in dispute. [Citations.] For example, an out-of-court statement is admissible if offered solely to give context to other admissible hearsay statements." (*People v. Davis* (2005) 36 Cal.4th 510, 535-536, citing in part *People v. Turner* (1994) 8 Cal.4th 137, 189-190, abrogated on another ground in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5, overruled on another ground by *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32.)

Thus, in *People v. Turner*, *supra*, 8 Cal.4th 137, the court admitted into evidence testimony of a jailhouse informant recounting a conversation between the defendant and his codefendant, Scott, about a robbery and murder that occurred at the Torrance Airport. (*Turner*, at pp. 187-188.) According to the informant, among other things, Scott remarked that he was " 'in jail for a double murder that I knew nothing about' " and " 'I thought that we were out just to do a little robbery at the Torrance Airport.' " (*Id*. at p. 188.) During the conversation, the defendant admitted shooting both victims. (*Ibid*.) Scott mentioned tying the victims up and asked why the defendant did it. The defendant responded, " 'Well, you know, man, dead witnesses don't talk.' " (*Ibid*.) Scott made other statements about defendant leaving the gun in Scott's car and why defendant used and did not dispose of a victim's credit card. The defendant responded he thought it would be " 'cool to use the card' " and he thought he had enough time because they changed the license plates on the car they stole from the victims. (*Ibid*.)

In response to the defendant's argument that Scott's statements were prejudicial inadmissible hearsay, the Supreme Court held the court properly admitted the statements to give meaning to the defendant's statements

9

admitted under Evidence Code section 1220, and allowing the statements for that limited purpose was within the court's discretion under Evidence Code section 352. (*People v. Turner*, *supra*, 8 Cal.4th at p. 189.) It explained that providing context to a defendant's statements is a permissible purpose validating the admission of testimony which would otherwise be inadmissible hearsay: "An out-of-court statement is properly admitted if a nonhearsay purpose for admitting the statement is identified, and the nonhearsay purpose is relevant to an issue in dispute." (*Ibid.*)

The *Turner* court held Scott's statements about the location and why/how the defendant shot the victims "gave context and meaning to defendant's admissions." (*People v. Turner*, *supra*, 8 Cal.4th at p. 190.) The court explained that the defendant's statements in response did not necessarily refer to the shooting at issue, giving import to Scott's statements. (*Ibid.*) It also pointed out "the jury was repeatedly instructed that they were not to consider Scott's statements for the truth of the matter asserted, but merely to give context to defendant's statements." (*Ibid.*) The court presumed the jury followed those instructions. (*Ibid.*)

This court reviews for abuse of discretion a trial court ruling on evidence in the face of a hearsay objection. (*People v. Chhoun* (2021) 11 Cal.5th 1, 47; *People v. Harris*, *supra*, 37 Cal.4th at p. 337.) The court's decision "will not be disturbed on appeal ' "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Chhoun,* at p. 47; *People v. Smith* (2017) 10 Cal.App.5th 297, 303.) We will affirm the court's ruling if correct on any ground. (*People v. Charles*, *supra*, 61 Cal.4th at p. 324; *People v. Battle* (2021) 11 Cal.5th 749, 800.)

10

II. *The Direct Messages Were Properly Admitted for a Nonhearsay Purpose*

The foregoing principles compel us to conclude the trial court did not abuse its discretion in admitting for a nonhearsay purpose Ladonna's statements from the social media direct messages. Her statement, "U like to rob people . . ." and "U robbed [J.K.]," gives context to Johnson's responses, "Na [¶] . . . [¶] My cussin [*sic*] did . . . ." Johnson's admission that his cousin committed the robbery is relevant and inculpatory in a scenario where the evidence permitted the jury to reasonably conclude J.K. was set up for the robbery by Johnson, who had initially made arrangements to meet with J.K. at the park but sent his cousins, and who J.K. believed was at the scene. The jury could reasonably conclude the perpetrator's statement: "Fuck Baker. We not [*sic*] giving him shit" meant that the perpetrator had decided not to share the spoils of the robbery with Johnson after all.

As in *People v. Turner*, *supra*, 8 Cal.4th 137, Johnson's own statements were properly admitted under Evidence Code section 1220, which does not require them to be incriminating admissions.[5] (See *People v. Castille* (2005) 129 Cal.App.4th 863, 876 ["Evidence Code section 1220 covers all *statements* of a party, whether or not they might otherwise be characterized as admissions"].)

Johnson also seeks to distinguish *People v. Turner*, *supra*, 8 Cal.4th 137 on grounds that here, while the trial court stated it would give a limiting instruction to the jury concerning the direct message evidence, it ultimately did not. At the time the detective testified about Ladonna's and Johnson's

---

[5]     Evidence Code section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity."

11

social media direct messages, the trial court did not instruct the jury to consider the evidence for a limited purpose. Concededly, the instruction the court did eventually give to jurors—telling them that certain evidence was admitted for a limited purpose and they "may consider that evidence only for that purpose and for no other" or "[s]ome evidence was admitted to explain the context of certain . . . direct messages"—was vague and unspecific as to how the jury should limit its consideration. The court did not specifically instruct the jury that it was not to consider Ladonna's direct message statements for the truth of what she said.

But that omission does not require reversal. It was for defense counsel to request an appropriate or more specific limiting instruction, as *absent a request,* the trial court has no duty to give an instruction limiting the purpose for which evidence may be considered. (*People v. Rodriguez* (2014) 58 Cal.4th 587, 647-648; accord, *People v. Smith* (2007) 40 Cal.4th 483, 516 [" 'absent a request by [the] defendant, the trial court has no sua sponte duty to give a limiting instruction' "]; see also Evid. Code, § 355 ["When evidence is admissible . . . for one purpose and is inadmissible . . . for another purpose, the court *upon request* shall restrict the evidence to its proper scope and instruct the jury accordingly" (italics added)].) If Johnson wanted amplification of the instruction given by the trial court, it was incumbent upon him to propose and craft such a modification.

In sum, the court did not err in admitting the direct message statements for the nonhearsay purpose of giving context to Johnson's responses.

III. *The Court Did Not Abuse Its Discretion Under Evidence Code Section 352*

Nor do we agree with Johnson's argument that even assuming the direct message statements were properly admitted for a nonhearsay purpose,

12

they were more prejudicial than probative under Evidence Code section 352 such that the court abused its discretion in admitting them. He maintains that absent the court's errors in admitting the statements, it is reasonably probable the result would be more favorable to him.

The direct message statements—Ladonna's accusation and Johnson's denial of his direct involvement but admission his cousin was one of the robbery's perpetrators—are plainly relevant to Johnson's guilt or innocence. We reject Johnson's contention that the probative value is slight because "there was no evidence of who Ladonna was, what, if any, her relationship was to the defendant or the victim, where or how she acquired her 'information' or what her motives might have been in accusing [him]" of the robbery. Johnson does not dispute that he wrote the responses, and his responses give probative value to the challenged evidence.

Further, the premise of Johnson's prejudice argument is that J.K. was unsure of his identification of Johnson at trial and there was no forensic evidence tying him to the robbery; he characterizes the evidence against him as "very weak." But as we have pointed out above (footnotes 2 and 3, *ante*), the assertions about J.K.'s initial problems identifying Johnson raise issues of credibility that we do not reweigh. The jury plainly believed J.K.'s later testimony that he had "[n]o question at all" the defendant was his friend from high school with whom he arranged the park meeting. And the People's theory—corroborated in part by J.K.'s social media messages to Johnson days after the robbery—was that Johnson set up the robbery and was not in the vehicle with J.K. that evening. Thus, the fact no fingerprints or DNA tied Johnson to J.K.'s car does not weaken the case against him for purposes of assessing prejudice. In our view, the probative value of the challenged evidence "was not substantially outweighed by the probability that its

13

admission would create a substantial danger of undue prejudice." (*People v. Scheid* (1997) 16 Cal.4th 1, 13.)  Johnson has not demonstrated prejudice.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DATO, J.